USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC.,

                Plaintiff,

-against-

SENTINEL INSURANCE COMPANY, LTD.,

                Defendant.

23-CV-10400 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

    This insurance coverage dispute arises out of an underlying personal injury action in New York State Supreme Court, *Eduardo Molina v. Venchi 2, LLC, et al.*, Index No. 505745/2019 (the "Underlying Action"). The Underlying Action concerns injuries allegedly resulting from a construction accident at premises owned by Central Area Equities Associates LLC ("CAEA") and leased by Venchi 2 LLC ("Venchi 2"). CAEA is insured by Plaintiff Associated Industries Insurance Company, Inc. ("Associated") and Venchi 2 is insured, through its parent entity Venchi US Inc. ("Venchi US"), by Defendant Sentinel Insurance Company, Ltd. ("Sentinel").

    Associated moved for summary judgment declaring that (i) Sentinel has a duty to defend and indemnify CAEA in the Underlying Action; (ii) Sentinel's coverage of CAEA is primary and Associated's coverage of CAEA is excess; and (iii) Sentinel must reimburse Associated for costs incurred or that will be incurred in defending and, if necessary, indemnifying CAEA in the Underlying Action. Sentinel opposes summary judgment for Associated and seeks summary judgment for itself declaring that (i) CAEA does not qualify as an additional insured under the policy held by Venchi US; and (ii) Sentinel does not have a duty to defend and indemnify CAEA in the Underlying Action.

1

For the reasons set forth below, the Court DENIES Associated's motion for summary judgment and GRANTS Sentinel's motion for summary judgment.

## BACKGROUND

### I.  FACTUAL BACKGROUND[1]

#### A.  The Underlying Action and its Parties

On September 20, 2018, a construction worker named Eduardo Molina allegedly was injured when he fell from a scaffold while working on a project at 861 Broadway, New York, NY 10003 (the "Premises"). *See* JSUF ¶ 26. On March 15, 2019, Mr. Molina sued Venchi 2; CAEA; and Transworld Equities, Inc., based on their alleged ownership and maintenance of the Premises, and asserted claims of common law negligence and failure to provide a safe workplace

---

[1] The facts set forth in this Opinion are drawn from the parties' submissions in connection with their cross-motions for summary judgment. The Court primarily sources facts from the parties' Rule 56.1 Joint Statement of Undisputed Facts ("JSUF," duplicate versions are filed at Dkt. Nos. 31 & 34). The Court also relies on the additional Rule 56.1 Statements provided by the parties separately, when appropriate. *See* Associated's Statement of Undisputed Material Facts ("Associated's SUF," Dkt. No. 30); Sentinel's Statement of Additional Undisputed Material Facts ("Sentinel's SUF," Dkt. No. 35). Specifically, where a fact stated in a movant's additional Rule 56.1 Statement is supported by evidence and controverted only by a conclusory statement by the opposing party, the Court finds that fact to be true. *See* Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically denied and controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); Local Rule 56.1(d) ("Each statement by the movant or opponent under Rule 56.1(a) and (b), including each statement denying and controverting any statement of material fact, must be followed by citation to evidence that would be admissible and set forth as required by Fed. R. Civ. P. 56(c)."). Where in its responses the opposing party agrees fully with a fact set forth in the movant's Rule 56.1 Statement, the Court cites only to the Rule 56.1 Statement of the movant. Citations to a Rule 56.1 Statement incorporate by reference the documents cited therein.

The Court refers to the memoranda of law in support of and in opposition to the cross-motions for summary judgment as follows: Dkt. No. 29 ("Associated Mot."), Dkt. No. 33 ("Sentinel Mot."), Dkt. No. 38 ("Sentinel Opp."), Dkt. No. 42 ("Associated Opp."), Dkt. No. 44 ("Associated Reply"), and Dkt. No. 45 ("Sentinel Reply").

The Court refers to the declarations submitted in support of and in opposition to the motions by the last name of the declarant, *e.g.*, Dkt. No. 27 is referred to as "Gershweir Decl." and Dkt. No. 39 is referred to as "Jones Decl."

under New York Labor Law and the Industrial Code of the City and State of New York. *Id.* ¶¶ 25–26.

CAEA was the owner of the Premises on the date of Molina's accident. *See* Associated's SUF ¶¶ 1, 3.[2] On April 12, 2018, CAEA entered into a written lease (the "Lease") with Venchi 2 to rent the "Ground Floor Store and appurtenant basement" of the Premises. JSUF ¶ 14. CAEA was mis-identified in the Lease as "Central Area Associates, LLC c/o Transworld Equities." By written rider to the Lease, CAEA (again mis-identified as "Central Area Associates") and Venchi 2 agreed that Venchi 2 would "provide and keep in force during the term of [the] Lease for the benefit of the Landlord general liability policies of insurance in standard form, protecting the Landlord against any liability whatsoever, occasioned by accident or disaster on, or about the demised premises or any appurtenance thereto." *Id.* ¶¶ 15, 17.

Venchi US is covered by an insurance policy issued by Sentinel as discussed *infra*; Venchi 2 is a distinct legal entity that was the Tenant under the Lease. *Id.* ¶ 20, 23. Venchi US is a foreign business corporation that was formed on or about November 24, 2015. *Id.* ¶ 22. Venchi 2 is a domestic limited liability company that was formed on or about April 10, 2018. *Id.* ¶ 21.

CAEA has been defended to date in the Underlying Action by counsel retained by Associated. *Id.* ¶ 27. Sentinel has not at any time assumed the defense of CAEA. *Id.* ¶ 28.

---

[2] The facts referenced in Associated's SUF regarding CAEA's corporate history and ownership of the Premises are not meaningfully denied or controverted by Sentinel with evidence that would be admissible and set forth as required by Rule 56(c) of the Federal Rules of Civil Procedure. *See* Dkt. No. 40 ¶¶ 1–3. For example, in response to Paragraph 2 of Associated's Statement of Undisputed Material Facts, Sentinel admits that Exhibit D to the Gershweir Declaration "purports to document the conversion of the entity called 'Central Area Equities Associates' into 'Central Area Equities Associates, LLC,' on January 1, 2008." *See id.* ¶ 2. Similarly, in response to Paragraph 4 of Associated's Statement of Undisputed Material Facts, Sentinel only "states that the Exhibits B–E to the Gershweir Dec[lcaration] do not prove that Central Area Equities Associates, LLC . . . was the sole owner of 861 Broadway[,] New York, New York . . . on or about September 20, 2018." *See id.* ¶ 3.

B. **Sentinel's Policy**

Sentinel issued an insurance policy, No. 10 SBA IS0555, to Venchi US for the policy period October 13, 2017, to October 13, 2018 (the "Sentinel Policy"). JSUF ¶ 1. Venchi US is the only named insured identified in the Declarations of the Sentinel Policy. *Id.* ¶¶ 1–4; *see also id.* ¶ 5 (defining "you" and "your" throughout the Sentinel Policy as references to the named insured, Venchi US). An entity that is not identified as a named insured may be covered under the Sentinel Policy in certain circumstances, including where the entity qualifies as an "additional insured." *See id.* ¶¶ 5, 7–8.

Section C of the Sentinel Policy's Business Liability Coverage Form, titled "WHO IS AN INSURED," specifies the individuals or organizations that qualify as insureds under the Sentinel Policy. Section C(2)(e) identifies any "unnamed subsidiary" of which Venchi US owned more than 50% of the voting stock as "also an insured."[3] *Id.* ¶ 7. Section C(6)(c)(1) provides that "[a]ny person or organization from whom you lease land or premises" is an additional insured when "you" have agreed, in a written contract or written agreement, that such person or organization be added as an additional insured on the Sentinel Policy, "provided the injury or damage occurs subsequent to the execution of the contract or agreement" and "only with respect to liability arising out of the ownership, maintenance or use of . . . [the] premises leased to you." *Id.*

Section A(1)(a) of the Sentinel Policy's Business Liability Coverage Form outlines the parameters for coverage of an "insured" who becomes legally obligated to pay damages because of "bodily injury":

---

[3] Venchi 2 is a subsidiary of Venchi US, but the record evidence does not establish what percentage of Venchi 2's voting stock Venchi US owns. *See* Jones Decl. ¶ 6.

4

> [Sentinel] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies. [Sentinel] will have the right and duty to defend the insured against any 'suit' seeking those [bodily] damages, even if the allegations of the 'suit' are groundless, false or fraudulent. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury'. . . to which this insurance does not apply.

*See id.* ¶ 6.

Section E(7) of the Sentinel Policy's Business Liability Coverage Form outlines Sentinel's coverage obligations where "other valid and collectible insurance is available for a loss [Sentinel] cover[s] under [the Business Liability Coverage Form]." *Id.* ¶ 9.

### C. Associated's Policy

Associated issued a Commercial Lines Policy, No. AES1052234 00, to Transworld Equities, Inc. for the policy period April 16, 2018, to April 16, 2019 (the "Associated Policy"). JSUF ¶ 10. The Associated Policy identifies CAEA as a named insured. *Id.*; *see also id.* ¶ 11 (defining "you" and "your" throughout the Associated Policy as references to CAEA, a named insured).

Like the Sentinel Policy, Section I(1)(a) of the Associated Policy's Commercial General Liability Coverage Form outlines the parameters for coverage of an "insured" who becomes legally obligated to pay damages because of "bodily injury." *See id.* ¶ 12 ("[Associated] will have the right and duty to defend the insured against any 'suit' seeking . . . damages [because of 'bodily injury'].").

### D. Tenders and Post-Tender Correspondence

By letter dated February 28, 2019, AmTrust North America, Inc. ("AmTrust") sent to Venchi 2 a pre-suit tender of CAEA's defense and indemnification in connection with an anticipated claim by Molina and requested that Venchi 2 forward the letter to its insurer. JSUF

¶ 30.  On March 28, 2019, Sentinel responded by email and letter, requesting a copy of the Associated Policy for Sentinel's review.  *Id.* ¶ 31.

By letter dated December 21, 2020, AmTrust tendered to Sentinel CAEA's defense and indemnification in the Underlying Action.  *Id.* ¶ 32.  On February 5, 2021, AmTrust followed up with Sentinel by email for its response to the tender.  *Id.* ¶ 33.  By letter dated April 8, 2021, which identified Venchi US as Sentinel's insured, Sentinel denied the tender of additional insured coverage under the Sentinel Policy and stated:

> [Sentinel] issued policy 10SBAIS0555 to Venchi US Inc for the policy 10/13/17 to 10/13/18 . . . Central Area Equities Associates, LLC is not specifically listed as a named insured, insured, or additional insured by endorsement on the policy.
>
> While the Lease Agreement does call for Venchi to carry liability insurance it does not state after my review that they name Central [Area Equities Associates] as an additional insured nor does it mandate that such coverage be on a primary or noncontributory basis.  Therefore, at this time Central [Area Equities Associates] would not meet the definition of additional insured nor does the lease require them to be named accordingly.

*Id.* ¶ 34.  By letter dated April 14, 2022, Associated responded and challenged the bases for Sentinel's denial of coverage.  *Id.* ¶ 35.  By email on October 19, 2022, in addition to asserting that the Sentinel Policy is not primary, Sentinel further responded:

> First, I agree with you that the lease does create an additional insuring obligation, under [Sentinel's] "Additional Insureds When Required By Written Contract . . . Lessors of Land or Premises" provision, but the insuring obligation is to the entity identif[ied] in the lease as the Owner—"Central Area Associates LLC c/o Transworld Equities."

*Id.* ¶ 36.  By email on November 3, 2022, Associated disputed Sentinel's priority of coverage analysis.  *Id.* ¶ 37.  By email on January 6, 2023, Sentinel responded:

> [Sentinel's] additional insurance obligation to Central Area Equities Associates LLC is triggered by an "additional insured by contract" provision that is contained in [Sentinel's] base commercial general liability coverage form.  The additional insurance obligation is not triggered by the attachment of an endorsement.  We therefore believe that Associated Industries Insurance Co. cannot rely on its excess

>clause (para. IV.4.b.(b)) stating *This insurance is excess over: …Any other primary insurance available to you…for which you have been added as an additional insured by attachment of an endorsement.*  It appears that [Sentinel] and Associated have a concurrent coverage obligation to Central Area Equities Associates LLC. Accordingly, we propose that [Sentinel] and Associated share in Central's defense and indemnity on a 50/50 basis.  [Sentinel's] additional insurance obligation is subject to [Sentinel's] general liability policy limit of $1,000,000, which is also the amount of insurance required by the lease, and our Named Insured Venchi 2, LLC is also entitled to [Sentinel's] $1,000,000 general liability limit.

*Id.* ¶ 38 (emphasis in original).  By email on April 5, 2023, Associated rejected Sentinel's offer to share in defending CAEA on a 50-50 basis.  *Id.* ¶ 39.

>Following this rejection, Sentinel wrote to Associated on February 8, 2024:
>
>Sentinel previously attempted to resolve the coverage dispute with you but our offer to resolve the matter was rejected.  It is Sentinel's position that neither Central Area Equities Associates LLC nor Transworld Equities LLC is an additional insured under the Sentinel Policy.
>
>Central Area Equities Associates LLC and Transworld Equities LLC rely on the lease dated March 13, 2018 ("Lease") between Central Area Associates LLC c/o Transworld Equities (Owner) and Venchi 2 LLC (Tenant) to trigger the Additional Insureds When Required By Written Contract provision within the Sentinel Policy. The Lease does not trigger this provision because the Tenant entity who entered the Lease, Venchi 2 LLC, is not a Named Insured under the Sentinel Policy.  Venchi 2 LLC is a subsidiary of Venchi US Inc.  Venchi 2 LLC is not identified as a Named Insured under the Sentinel Policy, and only qualifies as an insured as a subsidiary of Venchi US Inc.  Accordingly, Venchi 2 LLC does not qualify as a "you" or "your" as those terms are defined in the Sentinel Policy and used in the Additional Insureds When Required By Written Contract provision.  Sentinel reserves the right to further deny coverage to the extent Venchi 2 LLC is not a subsidiary and does not otherwise qualify as an insured under the Sentinel Policy.
>. . . .
>Because Venchi 2 LLC is not a Named Insured, and therefore, does not fall within the definition of "you" or "your" as those terms are defined in the Sentinel Policy and used in the Additional Insureds When Required By Written Contract provision, the Lease entered into by Venchi 2 LLC does not trigger such Additional Insureds When Required By Written Contract provision.  To qualify under such provision, the Lease would have to be entered into by the Named Insured, Venchi US Inc. Therefore, Sentinel has no obligation to afford additional insured coverage to Central Area Associates LLC.

*Id.* ¶ 40.

7

## II.  PROCEDURAL HISTORY

On October 23, 2023, Associated filed this action against Sentinel in New York State Supreme Court for New York County, seeking a declaration that Sentinel has a duty to defend and indemnify CAEA, as an additional insured under the Sentinel Policy, in the Underlying Action, and that such additional-insured coverage under the Sentinel Policy is primary, while any coverage afforded to CAEA under the Associated Policy is excess.  JSUF ¶ 41.  Associated also seeks to recover amounts it has incurred and will incur in defending and, if necessary, indemnifying CAEA in the Underlying Action.  *Id.*

On November 29, 2023, Sentinel timely removed this action to this Court, based on diversity jurisdiction under 28 U.S.C. § 1332.  *Id.* ¶ 42.  On December 6, 2023, Sentinel filed its Answer, denying that Associated is entitled to the relief sought and asserting, among other defenses: "Additional insured coverage is only available under the Sentinel Policy . . . if the named insured agreed in a written contract or a written agreement . . . that a person or organization be added as an additional insured under the named insured's policy."  *Id.* ¶ 43; *see* Answer (Third Affirmative Defense).

On July 31, 2024, the parties cross-moved for summary judgment.  *See* Dkt. No. 26 (Associated's motion for summary judgment); Dkt. No. 32 (Sentinel's motion for summary judgment).

## DISCUSSION

### I.  LEGAL STANDARD

#### A.  Summary Judgment

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is genuine if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)).

In cases involving cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017) (quoting *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)).

## B. Governing Law

New York substantive law governs this dispute.[4] Under New York law, it is well-established that courts "determining a dispute over insurance coverage [must] first look to the language of the policy." *Roman Catholic Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 21 N.Y.3d 139, 148 (2013) (quoting *Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 221 (2002)). The language of the policy is then to be "interpreted according to general rules of contract interpretation." *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 98 (2d Cir. 2012) (applying New York law); *see also Burlington Ins. Co. v. N.Y.C. Trans. Auth.*, 29 N.Y.3d 313, 321 (2017) ("An insurance agreement is subject to principles of contract interpretation.") (quoting *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 25 N.Y.3d 675 680 (2015)). In other words, insurance policies are to be construed "according to

---

[4] "When a federal court sits in diversity, it applies the choice of law rules of the forum state," which here is New York. *Chau v. Lewis*, 771 F.3d 118, 126 (2d Cir. 2014). "Those principles require that 'the law of the jurisdiction having the greatest interest in the litigation will be applied.'" *Fireman's Fund Ins. Co. v. Schuster Films, Inc.*, 811 F. Supp. 978, 982 (S.D.N.Y. 1993) (citing *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 197 (1985)). Here, the Sentinel and Associated policies were issued in New York, Molina's accident occurred in New York, and the Underlying Action is pending in New York.

common speech and consistent with the reasonable expectation of the average insured," *In re Viking Pump, Inc.*, 27 N.Y.3d 244, 257 (2016) (quoting *Dean v. Tower Ins. Co. of N.Y.*, 19 N.Y.3d 704, 708 (2012)), affording "a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect," *id.* (quoting *Roman Catholic Diocese of Brooklyn*, 21 N.Y.3d at 148). *See also Dish Network Corp. v. Ace Am. Ins. Co.*, 21 F.4th 207, 211 (2d Cir. 2021) ("[A]n insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract.") (citation omitted).

"If a contract is unambiguous, courts are required to give effect to the contract as written and may not consider extrinsic evidence to alter or interpret its meaning." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 170 F. Supp. 3d 634, 642–43 (S.D.N.Y. 2016) (quoting *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir. 1993)) (collecting cases applying New York law). "[A] contract is not ambiguous 'if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *In re Viking Pump, Inc.*, 27 N.Y.3d at 258. (alteration in original) (quoting *Selective Ins. Co. of Am. v. Cty. of Rensselaer*, 26 N.Y.3d 649, 655 (2016)). "The determination of whether an insurance policy is ambiguous is a matter of law for the court to decide." *Com. Union Ins. Co. v. Flagship Marine Servs., Inc.*, 190 F.3d 26, 33 (2d Cir. 1999) (quoting *In re Prudential Lines Inc.*, 158 F.3d 65, 77 (2d Cir. 1998)) (collecting cases applying New York law). "A contractual term is ambiguous if reasonable minds could differ as to the meaning of the term, [and] [a]mbiguity is determined by looking within the four corners of the document, not to outside sources." *Dish Network Corp.*, 21 F.4th at 211 (internal references omitted). Any ambiguities in contract language must be construed in favor of the insured. *In re Viking Pump, Inc.*, 27 N.Y.3d at 257. However,

"[u]nambiguous provisions of an insurance policy are to be given their plain and ordinary meaning, and the plain and ordinary meaning of words may not be disregarded to find an ambiguity where none exists." *Dish Network Corp.*, 21 F.4th at 211.

## II.     SENTINEL IS NOT EQUITABLY ESTOPPED FROM DENYING COVERAGE

The parties do not contest that, under the terms of Sentinel's policy, CAEA does not qualify for additional coverage.  Associated opens with affirmatively conceding this in its moving brief: "Sentinel's only meritorious defense to Associated's claim that it must defend and indemnify [CAEA] in the Underlying Action on a primary, non-contributory basis is the defense . . . that additional-insured coverage extends only to those leasing premises to a named insured under the [Sentinel] [P]olicy and Venchi 2 does not qualify as a named insured."  Associated Mot. at 15; *see also* Associated Opp. at 3 ("Sentinel could have devoted far less space to th[e] argument [that additional-insured coverage does not extend to CAEA] as Associated readily concedes it.").

Even if the matter were contested, the Court would find in favor of Sentinel on the policy coverage question, because the plain and unambiguous language of the Sentinel Policy does not afford additional-insured coverage to CAEA.  Section C(6)(c) of the Sentinel Policy's Business Liability Coverage Form provides that an entity "from whom *you* lease land or premises" may become an additional insured "when *you* have agreed, in a written contract[] [or] written agreement . . . that such . . . organization be added as an additional insured on *your* policy." JSUF ¶ 7 (emphasis added).  The terms "you" and "your" are defined as "the Named Insured shown in the Declaration," which is Venchi US, not Venchi 2, a subsidiary and separate legal entity from Venchi US.  Only Venchi 2 is a party, as Tenant, on the Lease with CAEA.  *See id.* ¶¶ 1–3, 5.  As other courts have held with respect to other similar provisions, the Court finds that, as a matter of law, Section C(6)(c) of the Sentinel Policy's Business Liability Coverage

Form does not afford additional-insured coverage to CAEA. *See, e.g.*, *Colony Ins. Co. v. Southwest Marine & Gen. Ins. Co.*, No. 22-CV-01590 (KPF), 2024 WL 1195401, at *7–8 (S.D.N.Y. Mar. 19, 2024) (holding insurer had no duty to cover putative additional insured where there was no written contract or agreement between the named insured and putative additional insured); *Mount Vernon Fire Ins. Co. v. Munoz Trucking Corp.*, 213 F. Supp. 3d 594, 602 (S.D.N.Y. 2016) (same).

Instead, Associated argues that Sentinel should be equitably estopped from denying coverage to CAEA because "through [Sentinel's] prior extensive communications with Associated, [Sentinel] raised only other defenses that ha[ve] no merit, thereby causing Associated to incur legal expense it would not have otherwise incurred to pursue its claim against Sentinel, and to reject a settlement it would otherwise have accepted." Associated Mot. at 15; *see also* Associated Opp. at 3 ("Indeed, it is precisely because that [no additional-insured coverage, because Venchi 2 is not a named insured] defense is otherwise valid that Associated argues that Sentinel is equitably estopped from relying on it due to Sentinel's pre-suit communications indicating it would not be asserting it, which caused Associated to incur expense to challenge the other, non-viable, defenses it did assert."). Associated further argues that, once Sentinel is estopped from asserting the defense that Venchi 2 is not a named insured, then CAEA would be entitled to defense and indemnification under the Sentinel Policy because Venchi 2 leased the Premises from CAEA, and thus CAEA would qualify as an additional insured under Section C(6)(c). *See* Associated Mot. at 21–22.

In response, Sentinel argues that "Associated's attempt to improperly manufacture additional insured coverage [by] claiming estoppel not as to any conduct [by Sentinel] as to [CAEA] but as to communications between Associated and Hartford . . . . fails because as a

12

matter of law no circumstances can create coverage where it never existed and where the putative insured has not suffered any prejudice." Sentinel Opp. at 15.

Equitable estoppel is appropriate "where an insurer, though in fact not obligated to provide coverage, without asserting policy defenses or reserving the privilege to do so, undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense." *Albert J. Schiff Assocs., Inc. v. Flack*, 51 N.Y.2d 692, 699 (1980); *see also Utica Mut. Ins. Co. v. 215 W. 91st St. Corp.*, 283 A.D.2d 421, 422–23 (2d Dep't 2001) ("If an insurer assumes the defense of an action and controls its defense on behalf of an insured with knowledge of facts constituting a defense to the coverage of the policy without reserving its right to deny coverage, the insurer is estopped from denying coverage at a later time, even if mistaken on the requirements of coverage."). "Unlike waiver, the doctrine of equitable estoppel may prevent an insurer from denying coverage under a policy where none previously existed, where the insured reasonably relies on the insurer's actions or omissions and prejudices its position in doing so." *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 388 F. Supp. 3d 304, 352 (S.D.N.Y. 2019). Estoppel "may be applied in disputes between insurers." *Yoda, LLC v. Nat'l Union Fire Ins. Co.*, 88 A.D.3d 506, 508 (1st Dep't 2011).

As an initial matter, the parties contest whether Sentinel can even be estopped from denying coverage where its policy never provided coverage in the first place. *See* Sentinel Mot. at 19; Associated Mot. at 16–17. The answer to this question is unclear, as both federal courts in this Circuit and New York state courts have reached conflicting conclusions as to whether an insurer can be estopped from disclaiming coverage where no such coverage exists under the subject policy. *Compare Berkley Assurance Co. v. Hunt Constr. Grp., Inc.*, 465 F. Supp. 3d 370, 382 (S.D.N.Y. 2020) *and Steadfast Ins. Co. v. Stroock & Stroock & Lavan LLP*, 277 F. Supp. 2d

13

245, 255 nn.17–18 (S.D.N.Y. 2003) (holding "even if [the insurer] had not explicitly reserved its rights, it cannot be said to have waived its defenses to coverage" and "[the insurer's] delay in disclaiming coverage cannot operate to create coverage where none exists") *and United Fire & Cas. Co. v. Arkwright Mut. Ins. Co.*, 53 F. Supp. 2d 632, 643 (S.D.N.Y. 1999) (same regarding waiver and estoppel) *and Interstate Indem. Co. v. Continental Ins. Co.*, No. 94-CV-05201 (DAB), 1998 WL 118165, at *4 (S.D.N.Y. Mar. 16, 1998) ("[W]here the policy in question never provided coverage of [the] type of claim or of the particular insured [at issue], coverage cannot be created through equitable estoppel solely because the insurer failed to make a timely disclaimer.") *and Rivera v. St. Regis Hotel Joint Venture*, 240 A.D.2d 332, 659 (1st Dep't 1997) ("[A] failure to disclaim cannot create coverage that the policy was not written to provide.") *and Wausau Ins. Co. v. Feldman*, 213 A.D.2d 179, 180 (1st Dep't 1995) (insurer could not be forced to defend the putative insured, despite having already defended him for nine years) *with Bluestein & Sander v. Chi. Ins. Co.*, 276 F.3d 119, 122 (2d Cir. 2002) ("Under New York common law, an insurer, who undertakes the defense of an insured, may be estopped from asserting a defense to coverage, no matter how valid, if the insurer unreasonably delays in disclaiming coverage and the insured suffers prejudice as a result of that delay.") *and Mass. Bay Ins. Co. v. Seneca Ins. Co.*, 21-CV-09184 (CM), 2025 WL 622158, at *22 (S.D.N.Y. Feb. 26, 2025) (rejecting the insurer's argument that it cannot be estopped to deny coverage where its policy never provided coverage) *and Gen. Acc. Ins. Co. of Am. v. Metropolitan Steel Indus.*, 9 A.D.3d 254 (1st Dep't 2004) (same); *see also* Associated Mot. at 17 (noting "line[s] of irreconcilable case law" and criticizing *Feldman* as "patient zero" of an "ill-founded 'rule'" that an insurer cannot be estopped from denying coverage that was never provided under the subject policy).

14

However, the Court need not resolve that question, because even assuming estoppel principles are applicable where there is no coverage under the plain language of the policy and no coverage has ever been provided, Associated cannot, as a matter of law, establish that Sentinel is estopped from disclaiming additional-insured coverage to CAEA under the facts and circumstances of this case. Sentinel disclaimed any such coverage by letter on April 8, 2021, in its initial response to AmTrust's tender, *see* JSUF ¶ 34, and has never provided coverage (either for defense or indemnification) to CAEA at any time. *Id.* ¶ 28. Associated argues that Sentinel did not identify the defense that Venchi 2 was not a named insured in its denial of coverage, and that Sentinel's partial or ambiguous recitation of its defenses in this pre-suit posture can support the application of estoppel, even absent a duty by Sentinel to identify any and all defenses. *See* Associated Mot. at 20. In its opposition to Sentinel's motion, Associated "readily concedes [that] Sentinel did not initially have a duty to assert" its coverage defense regarding Venchi 2. Associated Opp. at 3. And while certain of Sentinel's later communications with Associated suggest, directly or indirectly, that Sentinel believed CAEA may be entitled to coverage under the Sentinel Policy, *see* JSUF ¶¶ 36, 38 ("It appears that [Sentinel] and Associated have a concurrent coverage obligation to Central Are Equities Associates LLC"), no such coverage was ever extended and Associated has not established that these tender communications and negotiations caused prejudice or detrimental reliance related to the defense of the Underlying Action.[5]

---

[5] Associated does not claim any prejudicial delay by Sentinel in disclaiming coverage, but even if it did, any purported delay alone fails to establish prejudice. *See Steadfast Ins. Co.*, 277 F. Supp. 2d at 255 n.18 ("Moreover, [the insured] cannot demonstrate that it detrimentally relied on [the insurer's] conduct [because] . . . [d]elay in disclaiming coverage fails to establish prejudice."); *Interstate Indem. Co.*, 1998 WL 118165, at *4; *but see also* N.Y. Ins. Law § 3420(d)(2) (requiring a disclaimer "as soon as is reasonably possible").

Further, to the extent Associated's argument sounds in common law waiver, Sentinel has not waived its denial of additional-insured coverage on the basis that Venchi 2 is not a named insured. *See*

15

"Prejudice is established only where the insurer's control of the defense is such that the character and strategy of the lawsuit can no longer be altered." *Federated Dep't Stores, Inc. v. Twin City Fire Ins. Co.*, 28 A.D.3d 32, 39 (1st Dep't 2006). "[T]he [New York] Court of Appeals has only found estoppel in cases where, by the time the insurer attempted to avoid liability under the policy, the underlying litigation against the insured had reached a point where the course of the litigation had been fully charted." *206–208 Main St. Assocs., Inc. v. Arch Ins. Co.*, 106 A.D.3d 403, 406 (1st Dep't 2013); *compare id.* (no estoppel where the insured admitted litigation was in an "early phase") *and O'Dowd v. Am. Sur. Co. of N.Y.*, 3 N.Y.2d 347, 355 (1957) (no summary judgment based on estoppel where the disclaimer was two years prior to the trial absent further evidence of prejudice) *with Brooklyn Hosp. Ctr. v. Centennial Ins. Co.*, 258 A.D.2d 491, 492 (2d Dep't 1999) (estoppel where the underlying action was already on the trial calendar) *and U.S. Fid. & Guar. Co. v. N.Y. Susquehanna & W. Ry. Corp.*, 275 A.D.2d 977, 977 (4th Dep't 2000) (estoppel where the disclaimer occurred six days before the trial and on the eve of the settlement) *and Hartford Ins. Grp. v. Mello*, 81 A.D.2d 577, 578 (2d Dep't 1981) (estoppel where there was a two-year delay and the case was already on the trial calendar).

Associated concedes that Sentinel has never assumed the defense of CAEA. *See* JSUF ¶ 28. Associated simply claims that *it* relied on Sentinel's representations to its alleged

---

*generally Weintraub v. Great Northern Ins. Co.*, 571 F. Supp. 3d 250, 263 (S.D.N.Y. 2021) ("Federal courts and the Appellate Division have not always been so careful to distinguish between waiver and estoppel of an insurer's coverage defenses, though the primary difference would appear to be that estoppel applies to substantive coverage limitations whereas waiver applies to procedural conditions precedent to coverage."). New York law defines waiver as "a voluntary and intentional relinquishment of a known right." *State of N.Y. v. AMRO Realty Corp.*, 936 F.2d 1420, 1431 (2d Cir. 1991) (quoting *Albert J. Schiff Assocs.*, 51 N.Y.2d at 698). "An insurer can be said to have waived certain defenses where there is proof that the insurer intended to abandon that defense, or where such an intention can clearly be inferred from the circumstances." *Interstate Indem. Co.*, 1998 WL 118165, at *2. However, "the issue of the existence or non-existence of coverage cannot be waived." *See In re Balfour MacLaine Inter. Ltd.*, 85 F.3d 68, 82 (2d Cir. 1996); *Albert J. Schiff Assocs.*, 51 N.Y.2d at 698; *see also Starr Indem. & Liab. Co.*, 388 F. Supp. at 352.

detriment, namely by incurring legal expenses to challenge the other coverage defenses asserted by Sentinel and regretting its decision to reject Sentinel's settlement offer of shared coverage for the Underlying Action. *See* Associated Mot. at 21; Associated Opp. at 5. Associated does not adequately explain how it would have avoided those legal expenses if Sentinel had chosen to identify all possible coverage defenses, including the Venchi-2-is-not-a-named-insured defense, nor how its voluntary decision to reject a settlement offer that Sentinel had no obligation to extend could constitute detrimental reliance. But even treating Sentinel's post-tender communications, for the sake of argument, as "act[ions] in a manner inconsistent with a lack of coverage," *see Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 95 (2d Cir. 2002), Associated has not established that the putative insured, CAEA, relied on or was impacted by Sentinel's representations in any way. The key principle of estoppel is protecting *the insured* where "an insurer, though in fact not obligated to provide coverage[] [is] precluded from denying coverage upon proof that the insurer by its conduct, otherwise *lulled [the insured]* into sleeping on its rights under the insurance contract." *See Provencal, LLC v. Tower Ins. Co. of New York*, 30 N.Y.S.3d 138, 141 (2016) (emphasis added).

      Finally, even to the extent that any adverse consequences borne by Associated could support a showing of prejudice or detrimental reliance, which the Court finds they could not, Associated has not shown, in any way, that Sentinel's representations caused the character and strategy of the Underlying Action to be fixed or unalterable, or detrimental to the rights of CAEA to defend itself and assert its rights in the Underlying Action. The legal costs of this federal action are of no moment to the Underlying Action, and Sentinel's withdrawn settlement offer with respect to the Underlying Action has not affected the proceedings therein. At bottom, Associated's claims amount to regret at passing up a more favorable resolution of this coverage

dispute, even though Associated had access to the Sentinel Policy and thus was fully aware of the fact that it now concedes: The Sentinel Policy did not provide any coverage for CAEA. This is not the sort of circumstance that can support equitable estoppel, even if that claim were available in a circumstance where the underlying policy does not provide coverage and no coverage was ever provided. Accordingly, Associated has failed to establish, as a matter of law, that Sentinel can be estopped from disclaiming additional-insured coverage to CAEA in the Underlying Action.

* * *

Given the Court's holding that CAEA is not entitled to additional-insured coverage, the Court further holds that (i) Sentinel does not have a duty to defend and indemnify CAEA in the Underlying Action, which moots Associated's further request for relief regarding a declaration that Associated's coverage is excess; and (ii) Sentinel is not required to reimburse for costs incurred or that will be incurred in defending and, if necessary, indemnifying CAEA in the Underlying Action.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Sentinel's motion for summary judgment and DENIES Associated's motion for summary judgment. The Clerk of Court is respectfully directed to terminate Dkt. Nos. 26 & 32 and to enter judgment accordingly.

Dated: June 16, 2025
       New York, New York

                                 SO ORDERED.

                                 MARGARET M. GARNETT
                                 United States District Judge